[Cite as *Whipple v. Froehlich*, 2014-Ohio-658.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| STEPHEN A. WHIPPLE | : | JUDGES: |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | : | Hon. Sheila G. Farmer, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | |
| DAVID E. FROEHLICH, JR. | : | Case No. 13 CAE 04 0033 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:          Appeal from the Court of Common
                                  Pleas, Case No. 11 CVH 07 0912



JUDGMENT:                         Affirmed



DATE OF JUDGMENT:                 February 21, 2014



APPEARANCES:

For Plaintiff-Appellee            For Defendant-Appellant

CHAD A. HEALD                     SCOTT A. WOLF
125 North Sandusky Street         15 West Winter Street
Delaware, OH  43015               Delaware, OH  43015

*Farmer, J.*

{¶1}   Appellee, Stephen Whipple, owned two parcels of real estate and a business thereon in Ashley, Ohio.  The business consisted of a grocery store and a drive-thru with an Ohio liquor license.  In July of 2010, appellee met with Larry Wigton, a local auctioneer, to discuss selling the parcels and business.  Appellee chose an auction as opposed to a traditional listing.

{¶2}   An auction was held on August 12, 2010.  Appellant, David Froehlich, Jr., was the successful bidder in the amount of $222,000.00.  A real estate purchase contract was executed and the closing date was set for November 12, 2010.  Because appellant was unable to obtain financing within a timely manner, the sale was never closed.

{¶3}   Mr. Wigton contacted the other bidders to see if any of them were still interested in purchasing the parcels and business.  Appellee sold the parcels and business in December 2010 to Brent Stooksbury for $155,000.00.

{¶4}   On July 28, 2011, appellee filed a complaint against appellant for breach of contract and fraud.  Appellant filed a counterclaim alleging the same.  A bench trial commenced on March 12, 2013.  By final judgment filed March 29, 2013, the trial court found in favor of appellee on his complaint in the amount of $64,000.00 and found in favor of appellee on appellant's counterclaim.  The trial court further awarded appellee the $5,000.00 deposit paid by appellant.  Findings of fact and conclusions of law were filed contemporaneously with the final judgment.

{¶5}   Appellant filed an appeal and this matter is now before this court for consideration.  Assignments of error are as follows:

I

{¶6}   "THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY APPLYING AN IMPROPER MEASURE OF DAMAGES."

II

{¶7}   "THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY DETERMINING AN AMOUNT OF DAMAGES AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

III

{¶8}   "THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY DETERMINING AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE THAT THE PLAINTIFF-APPELLEE SUFFICIENTLY MITIGATED HIS DAMAGES."

I

{¶9}   Appellant claims the trial court erred in applying an incorrect measure of damages.  We disagree.

{¶10}  It is appellant's position that the trial court used the accepted formula for determining damages in a breach of contract case involving a real estate sale (difference between the contract price and the fair market value), but the contract sub judice involved not only the sale of real estate, but also non-real property i.e., liquor license, equipment, and good will.

{¶11}  In its findings of fact and conclusions of law filed March 29, 2013, the trial court found Mr. Stooksbury spent approximately $100,000.00 for renovations to the property, the auditor's valuation of the two parcels at $109,100.00 did not include the liquor license or any equipment, and the fair market value of the property at the time of

the second sale in December 2010 was $155,000.00 (Findings of Fact Nos. 35, 36, and 38). At Findings of Fact No. 40, the trial court found: "The plaintiff's net loss from the failed transaction was $69,000.00. He received $153,000.00 after paying his broker's revised commission, and the defendant had contracted to pay $222,000.00 plus the broker's commission. Mr. Wigton retains the defendant's $5,000 deposit and awaits this Court's instructions for its disposition." Clearly in fashioning the damages award, the trial court subtracted the realized amount, $153,000.00, from the real estate purchase contract price of the first sale, $222,000.00. Appellant is correct that the trial court used the measure of damages as if the contract sub judice was a real estate contract.

{¶12} Each of the sales included the same items: the two parcels of real estate, the business, certain equipment, and the liquor license. T. at 103. Mr. Wigton testified that none of the prospective bidders, including appellant, were interested in the business records (T. at 40), thereby negating that good will or business viability was sold. The equipment of the business was delineated as to which were sold as a fixture vis-á-vis which were not sold. T. at 46; Plaintiff's Exhibits 2, 3, and 5G. There is no evidence in the record of the value to be assigned to the liquor license. The minimum bid which would be accepted for the sale, including all equipment listed and the liquor license, was $150,000.00. T. at 21.

{¶13} From the evidence presented, there was no other method of measuring damages for the breach. The evidence supports the approach employed by the trial court. Appellant's own proposed findings of fact and conclusions of law filed March 22, 2013 set forth that the proper measure of damages should be the method that was in fact utilized by the trial court. See, Proposed Conclusions of Law Nos. E, F, and M.

{¶14} Assignment of Error I is denied.

II

{¶15} Appellant claims the amount of damages awarded is against the manifest weight of the evidence. We disagree.

{¶16} On review for manifest weight, the standard in a civil case is identical to the standard in a criminal case: a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury [or finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin,* 20 Ohio App.3d 172, 175 (1983). See also, *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52; *Eastley v. Volkman,* 132 Ohio St.3d 328, 2012-Ohio-2179.

{¶17} In this case, appellee bears the burden of proving damages by a preponderance of the evidence. When a purchaser defaults on a real estate purchase contract, the seller may recover the difference between the contract price and the fair market value of the real estate at the time of the breach. *E.K. Investments v. Kleckner,* 1st Dist. Hamilton Nos. C-900364, C-900427, C-900461, 1991 WL 249974 (November 27, 1991). "It has been held that when the sale of real estate after a breach of contract is made '***within a reasonable time and at the highest price obtainable after the breach, [it] is evidence of the market value on the date of the breach. (Citation omitted.)' " *Roesch v. Bray,* 46 Ohio App.3d 49, 50 (6th Dist.1988).

{¶18} Appellant argues the actual value of the two parcels and the business vis-á-vis the final sale price has not been established by the evidence. The basis of this

argument is that the bids from the first sale were higher than the final sale price of $155,000.00. Appellant also argues appellee did not attempt to obtain a higher price by negotiating further with the original bidders.

{¶19} Appellee testified he would have accepted a bid as low as $150,000.00 at the first sale as is evidenced by the minimum bid amount. T. at 21. He believed it was the fair market value. T. at 90. He also opined the value of the property at the time of the breach was $150,000.00 to $155,000.00 given the economic climate in Ashley and the volume of business at that time. T. at 102-103,108.

{¶20} Mr. Wigton testified as to the attempts to get the previous bidders to re-offer. T. at 29-30, 42-43. It was his opinion that subsequent auctions tend not to do as well the second time around. T. at 41. Mr. Wigton contacted the other bidders and gave them until the end of the week to make an offer. T. at 43. There were no efforts to pit the bidders against each other. *Id.* Mr. Stooksbury bid $155,000.00 and signed the purchase agreement on December 13, 2010. T. at 103-104; Plaintiff's Exhibit 12.

{¶21} Mr. Stooksbury testified that although the property was "run-down," he thought he "could get it back up and back on its feet." T. at 63. Although at the auction he had bid higher than $155,000.00, somewhere in the "low 170s," his threshold had been $160,000.00, but he got caught up in the process. T. at 64. The HUD-1 settlement statement listed the real estate at $130,000.00 and the personal property at $25,000.00. T. at 70; Plaintiff's Exhibit 14. Since the purchase of the parcels and the business, Mr. Stookbury has spent approximately $100,000.00 in improvements. T. at 72. He opined the price he paid was what it was worth given the amount of repairs needed, and it was "worth what I paid." T. at 72-73.

{¶22} Appellant's witness, Myron Ed Turner, was a licensed real estate agent/broker but not an appraiser. T. at 209, 216, 224. He testified to two comparables in Delaware County and one in Marion County. T. at 228. All the comparables sold in 2012, one located on U.S. Highway 23 for $165,000.00, another on land contract for $224,900.00, and the third was a vacant fast food restaurant/drive-thru that "was not all that comparable." T. at 229, 233-236. He opined the fair market value of the two parcels sub judice in 2010 was $195,000.00 to $210,000.00. T. at 230.

{¶23} We note the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. Jamison,* 49 Ohio St.3d 182 (1990). The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger,* 77 Ohio St.3d 415, 418, 1997-Ohio-260.

{¶24} In its Findings of Fact No. 37, the trial court specifically pointed to the weaknesses in Mr. Turner's valuation: "The defendant's expert witness failed to show that the property's fair market value exceeded $155,000 when he relied on purportedly comparable sales that were not comparable."

{¶25} We find the trial court did not err in finding the fair market value of the property to be $155,000.00 given the testimony and the trial court's determination on the credibility of the witnesses.

{¶26} Assignment of Error II is denied.

III

{¶27} Appellant claims the trial court erred in determining appellee significantly mitigated his damages because appellee failed to provide business records, refused to

grant an extension of the closing date, and failed to get the best possible price on the second sale. We disagree.

{¶28} As our brethren from the Tenth District explained in *Aurora Loan Services v. Sansom-Jones,* 10th Dist. Franklin No. 12AP-258, 2012-Ohio-5477, ¶ 25:

> The duty to mitigate, when it applies, requires an injured party to make reasonable efforts, not extraordinary ones, to limit the damages that result from the breach. *UAP–Columbus JV326132 v. O. Valeria Stores, Inc.,* 10th Dist. No. 07AP–614, 2008–Ohio–588, ¶ 17. Because failure to mitigate is an affirmative defense, the burden to prove it lies with the party raising it. *Baird v. Crop Prod. Servs.,* 12th Dist. No. CA2011–03–003, 2012–Ohio–4022, ¶ 43.

{¶29} Two of the three alternatives required the lengthening of the time for the sale. The trial court specifically found time was of the essence (Findings of Fact No. 34). Appellee testified a December sale was necessary because he had scheduled surgery and therefore would be unable to care for his business. T. at 86-87, 101. His recovery time was expected to be three to four months and his business would not have survived that long without him. T. at 101. Mr. Wigton also testified time was critical to the sale and that is why he chose to contact the other bidders with a December 6th cut-off date. T. at 29, 41.

{¶30} Appellant argues if the business records had been provided, he might have been able to obtain financing faster and could have closed within time. Earlene

Whipple, appellee's mother and bookkeeper, testified appellant requested financial records after the sale. T. at 322. However, financial records did not exist, just "daily balances and so forth. So we didn't have a financial statement on record." *Id.* Ms. Whipple stated she offered to show appellant how the records were kept, "how we did our, like our weekly thing and how we kept records and every three months, we took it to our accountant to do taxes, workmen's comp and all these type of things." T. at 323. However, appellant never took her up on her offer. *Id.*

{¶31} We find the evidence supports the trial court's conclusion that failure of mitigation had not been proven (Conclusions of Law Nos. 43-45):

> The defendant has the burden of proof to show by the preponderance of the evidence (a) that the plaintiff failed to exercise reasonable care to mitigate the plaintiff's damages, and (b) the amount of the damages that the plaintiff would have avoided by taking those measures. The defendant failed to satisfy his burden of proof for either of those elements.

> The plaintiff exercised reasonable care in deciding how to pursue a prompt sale after the failed transaction by consulting and accepting the advice of both a lawyer and a well qualified real estate sales agent. He likewise exercised reasonable care by accepting the offer that his real estate agent represented was the best offer he could obtain in his circumstances.

The defendant did not sufficiently rebut the legal presumption that an arms length sale shows a property's fair market value.

{¶32}  Assignment of Error III is denied.

{¶33}  The judgment of the Court of Common Pleas of Delaware County, Ohio is hereby affirmed.

By Farmer, J.

Gwin, P.J. and

Delaney, J. concur.

SGF/sg 1/24